**FILED**
**NOVEMBER 14, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Parental Rights to: | ) | No. 39167-1-III |
| | ) | (consolidated with |
| E.H.† | ) | No. 39168-0-III) |
| | ) | |
| _____ | ) | UNPUBLISHED OPINION |
| In re the Parental Rights to: | ) | |
| | ) | |
| O.H.H. | ) | |

LAWRENCE-BERREY, J. — The parents of two young children challenge the trial court's orders terminating their parental rights. We affirm.

FACTS

W.H. and K.H. are father and mother, respectively, to E.H. and O.H.H. E.H. was born in 2016 and O.H.H. in 2017. The parents have not assigned error to any findings of fact, except to two peripheral findings that we need not address. We take most of our facts from the trial court's findings.[1]

---

† To protect the privacy interests of the minor children, we use their initials and those of their parents throughout this opinion. Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

[1] Findings of fact to which no error is assigned are verities on appeal. *In re Marriage of Watanabe*, 199 Wn.2d 342, 349, 506 P.3d 630 (2022); *see also* RAP 10.3(a)(4) (requiring appellant to include in brief a separate and concise statement of each error).

The children were removed from their parents in late 2018 after criminal charges were filed against the father related to possession of child pornography. Eventually, both parents pleaded guilty to criminal charges related to possessing child pornography.

During the dependency phase of this matter, E.H. disclosed to her counselors that she had been sexually abused by her parents. Specifically, E.H. disclosed that her father touched her in "bad places," put "pee" in her mouth, and forced her to perform sex acts with him. Rep. of Proc. (RP) at 507, 24. E.H. further disclosed her mother's complicity in the abuse. She said her mother once took pictures while her father did "bad things" to her. RP at 38. She disclosed another instance when her mother told her it would not hurt when her father sexually abused her.

E.H.'s disclosures were consistent, detailed, and used age-appropriate terms to describe sexual information that should have been beyond her age. Counselors testified that various factors convinced them that the disclosures were genuine, not coached. The trial court found, "Based on [E.H.]'s disclosures and the counselors' very specific and credible testimony indicating that the disclosures were credible, [E.H.] has been the victim of abuse by her parents." Clerk's Papers (CP) at 373.

To his counselor, W.H. explained he had joined a sexual fantasy chat room looking for ideas to spice up his marriage. He happened on child pornography images and videos

2

and exchanged them with the mother and engaged in role-playing games. One video was of a man raping a two-year-old girl.

The mother testified that W.H. posed no risk to their children and denied any abuse occurred. The mother's supervised visits ended at some point because E.H. would experience trauma when seeing her. The father was not permitted to visit his children because a restraining order protected them.

The mother received mental health treatment from three different counselors but she failed to acknowledge any harm had been done to E.H. or that she played a part in the harm, as she maintained there was no abuse in the home.

Child therapist Carol Thomas testified that successful reunification therapy required parents to "admit and take responsibility for the abuse" their children had suffered. RP at 37. In her view, a parent's refusal to be accountable in this way foreclosed any therapeutic progress that the parent might otherwise have made. She stated, "[A] lot of therapists wouldn't even start therapy" until the parent admits responsibility for the child's abuse. RP at 38. The court described the credibility of Ms. Thomas and the other therapists who emphasized the parents' lack of insight, as "overwhelming[ ]." CP at 365. The court further found:

> There is little likelihood that conditions will be remedied so that the child[ren] can be returned to the parent(s) in the near future. . . . [Throughout] the life of the dependency and through the termination trial, the parents have failed to demonstrate insight into the reason [their children] remain out of the home and the reason that the court has not allowed visits between [them] and [the] children. . . . The parents needed to figure out how [their] behavior and recognition could be changed to accept [E.H.]'s disclosures that she's been harmed by them. Due to the failure to gain any insight into [E.H.]'s disclosures, the failure to learn how to accept the children's concerns and support them emotionally, and how to protect the children from further abuse after more than three years of services, the court finds that the parents are unlikely to make sufficient progress that their children may be returned in the foreseeable future.

CP at 376-77.

The trial court entered conclusions of law and orders consistent with its findings and terminated W.H.'s and K.H.'s parental rights to both children.

The parents timely appealed the orders.

ANALYSIS

The parents argue that the Department of Children, Youth and Families (DCYF) failed to advise them that their parental deficiencies included their failure to acknowledge sexual abuse against E.H. and that services offered by DCYF could not succeed absent their false acknowledgment of abuse. In light of the trial court's mostly uncontested findings, these arguments ring hollow.

4

No. 39167-1-III; No. 39168-0-III
*In re Parental Rights to E.H. & O.H.H.*

Taking these arguments in reverse order, the trial court found that E.H.'s disclosures were credible and that both parents had abused her. For this reason, we reject the parents' argument that services could not succeed unless they made a *false* confession.

Next, the parents' deficiency was not that they failed to acknowledge sexual abuse against E.H. It was that they could not safely parent their children unless they first acknowledged the harm they caused E.H. and then subsequently progressed in therapy. Until they acknowledged the harm they caused and showed therapeutic progress, both children were at continued risk.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Cooney, J.

5